UNITED STATES of America, Appellee,

v.

Domenick TORTORA, Edward Sparacio and Theresa Ribaudo, Defendants–Appellants,

Filippo Bua, Frank Loachino, Santo Fonocchiaro, Joseph Feli, Jack Sparacio, and Domenick Ungaro, Defendants.

Nos. 1048, 1551, Dockets 93–1400, 93–1437 and 93–1757.

United States Court of Appeals, Second Circuit.

Argued May 4, 1994.

Decided July 19, 1994.

Tanya Y. Hill, Asst. U.S. Atty., Brooklyn, NY (Barbara D. Underwood, Chief Asst. U.S. Atty. E.D.N.Y., David C. James, Asst. U.S. Atty., of counsel), for appellee.

Bernard Udell, Brooklyn, NY, for defendant-appellant Theresa Ribaudo.

Casey Donovan, New York City (Donovan & Chang, of counsel), for defendant-appellant Domenick Tortora.

Before: LUMBARD, ALTIMARI, and WALKER, Circuit Judges.

LUMBARD, Circuit Judge:

Domenick Tortora and Theresa Ribaudo appeal from judgments of conviction entered in the District Court for the Eastern District of New York (Johnson, *J.*). A jury found Tortora guilty of one count of conspiracy to commit bank fraud, one count of bank fraud, and four counts of making false statements on a loan application, and acquitted him on nine additional false statement counts. On October 29, 1993, Judge Johnson sentenced Tortora to five years' imprisonment, with four and one-half years suspended. The jury found Ribaudo guilty of one count of bank fraud and one count of making false statements on a loan application, and acquitted her on three other counts. On June 11, 1993, Ribaudo was sentenced to three years' probation.

On appeal, Tortora argues: (1) that in denying his suppression motion the district court accepted a magistrate judge's recommendation without reviewing his findings; (2) that a witness's in-court identification of Tortora resulted from an unduly suggestive pretrial identification procedure; and (3) that his trial should have been severed from his co-defendants' trial because their defenses were antagonistic to his. Ribaudo argues that the district court improperly instructed the jury on a conscious avoidance theory.

We affirm Ribaudo's conviction; we remand Tortora's case to the district court for a *de novo* review of the magistrate judge's recommendation and for further proceedings and entry of judgment.

Evidence at trial disclosed the following. In 1986 and 1987, Salvatore Feli conspired with Tortora, Ribaudo, and others to defraud the Independence Savings Bank ("Independence") in Brooklyn. Feli encouraged his friends and family to file false loan applications for small or non-existent companies. Feli used his relationship with Hans Kratz, vice president and director of commercial loans at Independence, to have the loans approved. The borrowers then paid "finder's fees" to Feli.

*Domenick Tortora*

Tortora, a driver for a car service owned by Feli, took out loans for $20,000 and $75,000 for a fictitious construction company, and used the proceeds to pay personal debts. In March 1991, Tortora was indicted on multiple counts of conspiracy to commit bank fraud, bank fraud, and making false statements on a loan application.

Before trial, Tortora moved to suppress inculpatory statements he made to federal agents. Judge Johnson referred the matter to then-Magistrate Judge Zachary Carter for a suppression hearing, which was held on December 21, 1992. FBI Special Agent Richard Reinhardt testified that in June 1988 he and FBI Special Agent Kevin Morrisey went to Tortora's home to question him about his involvement in the scheme. Tortora invited them inside. Without reading a *Miranda* warning to Tortora, the agents began questioning him about his loans. Tortora admitted that he had obtained two loans from Independence based on false statements that he owned a construction company.

Agent Morrisey testified about Tortora's August 1988 arrest, which occurred at Newark Airport on a warrant issued on a complaint. Reinhardt read Tortora the *Miranda* warning in the car on the way to the New

York Office of the FBI. At the FBI Office, Tortora signed an advice of rights form, and admitted that he fraudulently obtained the loans. Morrisey then prepared an inculpatory statement, which Tortora signed.

At the end of the hearing, Magistrate Judge Carter announced his recommendation that Tortora's motion be denied. He found that the agents' testimony was credible. He also found that Tortora was not in custody in June 1988 when questioned in his home, and the agents therefore were not required to read him a *Miranda* warning. As for the August 1988 statements, he found that the agents properly informed Tortora of his rights, and that Tortora made an uncoerced waiver of those rights.

At a January 25, 1993 pre-trial conference before Judge Johnson, counsel for Tortora noted that he had not received the magistrate judge's report and recommendation, and stated that he objected to the magistrate judge's decision. The government indicated that it too had not received a report and recommendation.[1] The conference adjourned without the court having ruled on the suppression motion.

A jury trial for Feli, Tortora, Ribaudo, and nine other defendants began on February 8, 1993. Before trial, and again during the cross-examination of the government's first witness, Feli and Tortora moved for severance on the ground that the other defendants were planning to present antagonistic defenses. The court granted Feli's motion and denied Tortora's motion.

At trial, the government called agent Reinhardt to testify about the June 1988 interview with Tortora. Tortora objected to the testimony because the magistrate judge had not submitted a report and recommendation, and the court had not ruled on Tortora's suppression motion. When asked if it had received a report and recommendation, Judge Johnson stated: "I don't know what happened, but I approve the magistrate's report and recommendation." The government then introduced Tortora's June 1988 and August 1988 statements.

The government also called Ginger Sparacio, the ex-wife of Salvatore Feli. Tortora moved to preclude Sparacio from identifying him in court, on the ground that the identification would be a product of an overly-suggestive procedure. In a *Wade* hearing held to decide the issue, *see United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Sparacio testified that in 1987 she had spent approximately twenty minutes with Tortora at the Gateway Bank in order to cash a check for him. She also had seen Tortora six to twelve times at her husband's car service, most recently five years earlier. In 1990 or 1991, she had identified Tortora from a photograph shown to her by the prosecutor. Sparacio was shown several pictures, one at a time, and asked if any of the pictures was of Tortora. The district court denied Tortora's motion because Sparacio "properly identified the defendant Domenick Tortora based upon a prior relationship," and there was "no impropriety in the showing of photographs." Following the *Wade* hearing, Sparacio identified Tortora as the person she had met at the Gateway Bank to cash a check for Feli.

Tortora called no witnesses. The jury convicted Tortora of one count of conspiracy to commit bank fraud, one count of bank fraud, and four counts of making false statements on a bank loan application, and acquitted him of the nine remaining counts. Judge Johnson sentenced Tortora to five years' imprisonment, four and one-half of which were suspended.

Tortora now appeals on the grounds that (1) the district court denied the suppression motion without having reviewed the magistrate judge's report and recommendation; (2) Sparacio's in-court identification was the result of an overly-suggestive identification procedure; and (3) he was entitled to a severance.

### Theresa Ribaudo

Theresa Ribaudo, an acquaintance of Feli, obtained a $120,000 commercial loan from Independence in 1987. Ribaudo was indicted

---

**1.** The record shows no evidence that the magistrate judge ever prepared a report and recommendation.

on one count of conspiracy to commit bank fraud, one count of bank fraud, and three counts of making false statements on a loan application.

At trial, the government relied largely on documentary evidence and the testimony of FBI Agent Vicki Davis. Ribaudo's loan application stated that she desired a loan for a dress boutique that had been in operation for three years, and included a false profit and loss statement for the boutique. Ribaudo signed the application, but much of the information was not in her handwriting. The profit and loss statement was signed by Louis Canaras, who purported to be the accountant for the boutique.

Agent Davis testified that Ribaudo told the following story in a June 1988 interview. Ribaudo ran into Feli in 1987, and told him that she wished she could own her own store. Feli told her that he knew of a boutique for sale, and that he could help her get a loan to buy the boutique. Ribaudo felt that Feli was "jerking her around," but her husband told her that it could be legitimate and that she should talk to Feli about it. Feli, Ribaudo and her husband then went to Independence to apply for the loan. Ribaudo admitted to Davis that she had signed the application, but claimed that she did not fill it out or read it before signing it, and did not know that it stated that the store had been in operation for three years. In addition, she contended that she had never seen the falsified profit and loss statement. Ribaudo further told Davis that she gave $15,000 from the proceeds to her husband; she assumed that the money was for "the bankers."

Ribaudo called only one witness, Michael Eidman, an attorney. He testified that he formed a corporation for Ribaudo, that he represented Ribaudo in the purchase of the boutique, and that he represented Ribaudo in various other matters relating to the boutique. Ribaudo's defense was that she did not knowingly make a false statement or have an intent to defraud when she signed the application. She contended that she obtained the loan in order to open a boutique, that she actually opened and operated the boutique, and that she made loan payments until the business failed.

Over Ribaudo's objection, the court gave the jury a "conscious avoidance" instruction, which included the following:

> In determining whether a defendant acted knowingly, you may consider whether he or she deliberately closed his or her eyes to what otherwise would have been obvious. If you find, beyond a reasonable doubt, that a defendant acted with a conscious purpose to avoid learning that false statements were made to a bank, then the knowledge element may be satisfied.

The jury convicted Ribaudo on one count of bank fraud and one count of making false statements on a loan application, and acquitted her on all other counts. Judge Johnson sentenced Ribaudo to three years' probation.

Ribaudo now appeals on the ground that the court should not have given a conscious avoidance charge.

*Tortora's Suppression Motion*

■ The district court improperly admitted evidence of Tortora's June 1988 and August 1988 statements without having reviewed the magistrate judge's recommendation. A magistrate judge may not make a final determination on a suppression motion in a criminal prosecution, but only may conduct hearings and make proposed findings of fact and recommendations. 28 U.S.C. § 636(b)(1) (1988). If either party objects to the magistrate judge's recommendations, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Here, the district court did not conduct a *de novo* review—or any review at all—of the magistrate judge's recommendation. By blindly adopting the magistrate judge's findings, apparently without ever having received a report and recommendation, the district court violated § 636(b)(1). *See Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976) ("The authority—and the responsibility—to make an informed, final determination, we emphasize, remains with the judge."); *United States v. Elsoffer,* 644 F.2d 357, 359 (5th Cir.1981) (per curiam) (remanding where it was unclear whether the district court had reviewed the transcript of

the suppression hearing before adopting the magistrate judge's recommendation).

■ The government argues that Tortora waived his right to appellate review because he failed to make specific objections in the district court. *See Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988) (party that fails to object has no right to appellate review); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam) (same); *Howard v. Secretary of Health and Human Services,* 932 F.2d 505, 509 (6th Cir.1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."). We disagree. Tortora objected to the magistrate judge's recommendation at the first proceeding after the suppression hearing—the pre-trial conference—as well as at trial. Although Tortora made only a general objection, the objection was adequate under the circumstances. A defendant cannot articulate objections to findings and recommendations before he or she has received the report and is fully advised of its contents. Neither the magistrate judge nor the district court made a copy of the report available to Tortora.

■ The government also argues that Tortora has not presented any meritorious objections to the magistrate judge's recommendation. We decline to address the merits of Tortora's objections. Tortora has questioned the credibility of witnesses, which is "the province of the district court." *United States v. Rosa,* 11 F.3d 315, 329 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211, *and cert. denied,* —— U.S. ——, 114 S.Ct. 1864, 128 L.Ed.2d 485 (1994). The district court has discretion to call witnesses as part of its *de novo* review. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980).

Accordingly, as to Tortora, we remand with instructions that the district court conduct a *de novo* review of the magistrate judge's recommendation.

*Sparacio's In–Court Identification of Tortora*

■ When objection is made to a pre-trial identification, an analysis of whether the witness may identify the defendant at trial generally involves a two-step inquiry. *See United States v. Maldonado–Rivera,* 922 F.2d 934, 973 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984, *and cert. denied,* 501 U.S. 1233, 111 S.Ct. 2858, 115 L.Ed.2d 1025 (1991). First, the court inquires whether the pre-trial identification procedures were unduly suggestive. Second, if the procedures were unduly suggestive, the court must ask "whether an in-court identification will be the product of the suggestive procedures or whether instead it is independently reliable." *United States v. Concepcion,* 983 F.2d 369, 377 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993).

■ Assuming, without deciding, that the pre-trial procedure was overly suggestive, we find that the in-court identification was independently reliable. The factors to be considered in determining reliability include: (1) the witness's opportunity to view the criminal; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification. *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972). "In each case, the factors must be assessed in light of the totality of the circumstances, and the linchpin of admissibility is reliability." *Concepcion,* 983 F.2d at 378.

■ Sparacio's in-court identification was reliable. Sparacio spent about twenty minutes with Tortora in the bank. *Compare id.* at 379 (witness had "just a quick look" at the criminal as entire incident took 5–7 seconds). Additionally, she had exchanged greetings with Tortora at least six to twelve other times. *Compare id.* (witness had never seen the criminal before). She knew him by his first name, and knew that he worked at her husband's car service. Moreover, she was certain that the person in court was the person whom she had met at the bank.

Tortora argues that the identification was unreliable because five years lapsed between the crime and the identification and because

Sparacio had not given an accurate description of Tortora before she identified his photograph. These factors are outweighed by the particularly strong indicia of reliability present here. *See United States v. Hill,* 967 F.2d 226, 232–33 (6th Cir.) (five-year period between incident and in-court identification outweighed by other indicia of reliability), *cert. denied,* ––– U.S. ––––, 113 S.Ct. 438, 121 L.Ed.2d 357 (1992).

*Severance*

Tortora argues that he was entitled to a severance for two reasons. First, the co-defendants defended on the ground that the bank was lax in giving loans, while he defended on the ground that Feli and Kratz had conspired to defraud the bank and the borrowers. Second, he was the only defendant who obtained a loan for a fictitious company. We are not persuaded.

Tortora failed to demonstrate "a serious risk that a joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* ––– U.S. ––––, ––––, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). No defendant placed the blame on Tortora; all defendants, including Tortora, portrayed themselves as innocent victims, and asserted that Independence, Kratz, and/or Feli were the only wrongdoers. Severance was not required merely because co-defendants did not present identical defenses.

*Conscious Avoidance Charge*

■ Ribaudo submits that the district court improperly instructed the jury on a conscious avoidance theory. We disagree. The conscious avoidance charge is relevant where the defendant claims that he or she lacks the knowledge necessary for conviction, but where the lack of knowledge may be construed as deliberate ignorance. *United States v. Boothe,* 994 F.2d 63, 69 (2d Cir. 1993). The charge is allowed where "the evidence is such that a rational juror could be 'persuaded beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'" *Id.* (quoting *United States v. Rodriguez,* 983 F.2d 455, 458 (2d Cir.1993)).

A rational juror could be persuaded beyond a reasonable doubt that Ribaudo consciously closed her eyes to the high probability that her application contained falsehoods and that the loan was fraudulent. Ribaudo admitted to agent Davis that she felt something was wrong with the deal, and that she couldn't understand why the bank would give her a loan when she didn't have any collateral. She felt that Feli was "jerking her around" when he offered to help her secure the loan. Ribaudo's state of mind could be inferred from the fact that she never disclosed the source of funds to Michael Eidman, the attorney who represented her when she purchased the boutique.

The conviction of Theresa Ribaudo is affirmed. As for Domenick Tortora, we remand to the district court with instructions that the court conduct a *de novo* review of the magistrate judge's recommendation, and for further proceedings and entry of appropriate judgment.