**UNITED STATES of America**

v.

**Wlodek Jan LECH.**

No. S2 94 Cr. 285 (SS).

United States District Court,
S.D. New York.

July 24, 1995.

---

Mary Jo White, United States Attorney, S.D. of New York, New York City (Jonathan N. Halpern, Assistant United States Attorney, of counsel), for U.S.

Leonard F. Joy, The Legal Aid Society, Federal Defender Div., New York City (An-drew H. Schapiro, Associate Attorney, of counsel), for Wlodek Jan Lech.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant Wlodek Jan Lech ("Lech") moves for a ruling *in limine* permitting him to introduce at trial certain results from two polygraph exams. In the alternative, Lech seeks a hearing on this motion pursuant to Federal Rule of Evidence 104(a). For the reasons discussed below, both motions are denied.

### Background

Lech is charged with conspiracy and bribery in a scheme to have the New York City Board of Education ("BOE") award a $500,-000.00 contract to remove asbestos from the Julia Richman High School in Manhattan. As a defense to these charges, Lech arranged for two polygraph examinations to be conducted by separate examiners. Lech now seeks to introduce at his upcoming trial his responses to certain questions. From the first examination, Lech seeks to introduce the following questions and answers:

1. Did you try to bribe any Board of Education official to obtain [sic] asbestos removal contract?

    (Subject answered—No)

2. Did you take part in trying to bribe Board of Education officials to obtain [sic] asbestos removal contract?

    (Subject answered—No)

*See* Declaration of Andrew H. Schapiro, sworn to June 26, 1995 (hereinafter "Schapiro Decl."), at Ex. D. The questions and answers Lech seeks to introduce from his second examination are:

\# 5  Did you try to bribe any Board of Education official to obtain asbestos removal contracts?

(Subject answered "No".)

\# 7  Did you bribe any Board of Education official to obtain asbestos removal contracts?

(Subject answered "No".)

#9 Did you authorize any payment to any Board of Education official to obtain asbestos removal contracts?

(Subject answered "No".)

*See id.* at Ex. E.

### Discussion

At the outset, Lech concedes that the Second Circuit has intimated that polygraph results are generally inadmissible. *See* Memorandum of Law, dated June 26, 1995 (hereinafter "Memorandum"), at 5–6 (citing *United States v. Rea,* 958 F.2d 1206, 1224 (2d Cir. 1992); *United States v. Bortnovsky,* 879 F.2d 30, 35 (2d Cir.1989)). Lech, however, questions the continuing validity of these cases in light of the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

In *Daubert,* the Supreme Court overruled the admissibility test for scientific evidence set forth in *Frye v. United States,* 293 F. 1013, 1014 (App.D.C.1923). Under *Frye,* the touchstone for admissibility was whether the scientific technique in question was generally accepted in the relevant scientific community. In *Daubert,* the Supreme Court held that the Federal Rules of Evidence (hereinafter the "Federal Rules"), rather than the *Frye* test, govern the admissibility of scientific evidence. *See Daubert,* —— U.S. at ——, 113 S.Ct. at 2794–95. The Court observed that the rigid "general acceptance test was at odds with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Id.* at ——, 113 S.Ct. at 2794 (internal quotations and citations omitted); *see also* F.R.Evid. 401 (relevant evidence is evidence having any tendency to make the existence of any fact of consequence more or less probable).

■ Although advocating a more liberal standard of admissibility, the *Daubert* Court stressed that the trial judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at ——, 113 S.Ct. at 2795. The standard for admitting scientific evidence under the Federal Rules is set forth in Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The inquiry under Rule 702 "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at ——, 113 S.Ct. at 2797. Factors to consider when evaluating the admissibility of evidence under Rule 702 include whether (1) an inference or assertion to be drawn from the testimony is reliable, that is, based upon the scientific method; and (2) the testimony to be introduced will assist the trier of fact in understanding the evidence or to determine a disputed fact. *Id.* at ——, 113 S.Ct. at 2795–96.

To facilitate inquiries under the first prong of the Rule 702 analysis, the *Daubert* Court suggested that trial judges consider:

1. whether the hypothesis or technique can be or has been tested.

2. whether the theory or technique has been subjected to peer review and publication.

3. the known or potential rate of error.

4. the existence and maintenance of standards controlling the technique's operation.

5. the degree of acceptance of the hypothesis or technique within the relevant scientific community.

*See id.* at ——, 113 S.Ct. at 2796–2797 (citations omitted).[1]

■ Even if evidence is admissible under Rule 702, however, scientific evidence may be excluded under Rule 403, which provides:

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

---

**1.** For a thorough discussion concerning the application of these factors, see *United States v.* *Starzecpyzel,* 880 F.Supp. 1027 (S.D.N.Y.1995) (McKenna, J.).

delay, waste of time, or needless presentation of cumulative evidence.

For purposes of Lech's motion, I am willing to assume that Lech's polygraph results are admissible under Rule 702 and that therefore, no hearing is required. Even so, I find that the particular questions and answers proffered by Lech, and the opinions derived therefrom, are inadmissible under Rule 403. Each of the questions Lech seeks to introduce call for his belief about the legal implications of his actions, without setting forth the factual circumstances underlying such a conclusion. In other words, the jury would receive evidence showing Lech's personal belief that he did not violate any federal criminal statute, but would not receive any information that would assist its inquiry to find the facts. Thus, I find that there is a substantial possibility that the admission of Lech's answers would mislead and confuse the jury, far outweighing the probativeness of the exam results.

Under Rule 704(a), opinion testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by a trier of fact. Rule 704(b), however, qualifies Rule 704(a), by prohibiting experts from testifying whether a defendant had the requisite mental state constituting an element of a crime. Here it is a close question whether the questions posed by the polygraph experts complied with the dictates of Rule 704(b), since the questions embrace Lech's knowledge and intentions in dealing with various BOE officials. In this circumstance, I determine that the prejudicial value of this evidence substantially outweighs its probative value.[2]

Although I have determined that the polygraph results here are properly excluded under Rule 403, I note that Lech's argument that Second Circuit caselaw needs to be revisited in light of *Daubert* is tenuous. As recognized in *Daubert*, the Second Circuit has long criticized the *Frye* test, and has held that questions relating to the admissibility of scientific evidence should be determined under the Federal Rules. *Id.* at —— n. 5, 113 S.Ct. at 2793 n. 5 (citing *United States v. Williams*, 583 F.2d 1194 (2d Cir. 1978), *cert. denied*, 439 U.S. 1117, 99 S.Ct. 1025, 439 U.S. 1117 (1979) (*Frye* is superseded by the Rules of Evidence)). The Second Circuit reaffirmed *Williams* in *United States v. Jakobetz*, 955 F.2d 786 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992). Indeed, the *Jakobetz* Court suggested that district court evaluate scientific evidence utilizing factors which are similar to those enunciated in *Daubert*. These factors include the potential rate of error, the existence and maintenance of standards, the care and concern with which a scientific technique has been employed, and whether it appears to lend itself to abuse.[3] *Id.* at 794 (citing *Williams*, 583 F.2d at 1198–99). The *Jakobetz* Court also indicated that a finding of admissibility under Rule 702 does not automatically satisfy the requirements of Rule 403. *Id.*

Thus, Lech cannot argue that the Second Circuit has applied the wrong standard in cases involving the admissibility of polygraph tests. Indeed, the basis for the Second Cir-

---

**2.** A different situation might be presented if a defendant sought to introduce answers to an exam where he or she completely denied any connection or involvement with the charged conduct. In the instant case, a number of Lech's conversations were recorded by cooperating witnesses. Thus, while Lech can argue that he had no criminal intent, and therefore is not guilty of any crime, he cannot claim that he has absolutely no connection with the individuals he is alleged to have conspired with. This distinction substantially affects the balancing under Rule 403 that I must consider. When a defendant unequivocally denies any connection to a particular scheme (e.g. I never met John Doe, let robbed a bank alongside him), the factual predicates for the polygraph examiner's conclusions are relatively simple, and thus may be less likely to confuse the

jury. When a defendant denies that his actions were criminal (e.g. I know John Doe, and we engaged in certain acts or conversations, but we did not conspire), then the factual predicates underlying a defendant's answers are a critical issue. In such instances, there is a substantial likelihood of confusing a jury.

**3.** Other factors suggested by the Second Circuit are the existence of an analogous relationship with other types of scientific techniques that are routinely admitted into evidence; and the presence of 'fail-safe' characteristics or the likelihood that potential inaccuracies will redound to the defendant's benefit rather than to his or her detriment. *See Jakobetz*, 955 F.2d at 794 (citation omitted).

586

cuit's reluctance to admit polygraph evidence is not based upon its view that polygraph exams are not generally accepted in the scientific community. Instead, the Second Circuit's concern about polygraph test centers upon the methodology employed by the polygraph examiner, an important factor under *Daubert.* In *Williams,* for example, the Second Circuit noted:

> Spectrography is qualitatively different from polygraph evidence. In spectrography, the examiner merely compares spectrograms reflecting the purely physical characteristics of a voice. In polygraph analysis, the examiner must go on, to extrapolate a judgment of something not directly measured by the machine, *i.e.,* the credibility of the person examined. *Commonwealth v. Lykus,* 367 Mass. 191, 327 N.E.2d 671 (1975). The skill of the polygraph examiner, the kinds of questions asked, natural variations in blood pressure among individuals, and in how accustomed they are to lying, are unpredictable variables that make the polygraph technique far more speculative than is spectrographic analysis.

*Williams,* 583 F.2d at 1199 n. 9.[4]

■ Finally, Lech argues that the admission of his polygraph results is "mandated" by the Fifth Amendment guarantee of a fair trial and the Sixth Amendment right for an accused to produce favorable witnesses. *See* Memorandum at 18. The only support Lech cites in favor of this claim is Justice Stewart's eloquent concurring opinion in *Hawkins v. United States,* 358 U.S. 74, 81, 79 S.Ct. 136, 140, 3 L.Ed.2d 125 (1958), where, speaking in the context of evidentiary privileges, he noted that "a rule that impedes the discovery of truth in a court of law impedes as

well the doing of justice." Lech has no constitutional right to introduce evidence whose probative value is substantially outweighed by its tendency to confuse and mislead a jury. Instead of assisting a jury to determine the facts, introducing Lech's polygraph evidence would be so misleading and confusing that it would impede the proper and fair administration of justice.

### Conclusion

For the reasons discussed above, Lech's motion *in limine* to admit certain questions and answers from two polygraph tests is denied, as is his motion for a hearing on this issue. The Clerk of the Court is directed to enter this Opinion and Order accordingly.

**SO ORDERED.**

---

4. Other courts, as well as the Congressional Office of Technology Assessment, have raised concerns about the manner in which polygraph technology is employed, rather than with the technology itself. *See, e.g., United States v. Piccinonna,* 885 F.2d 1529, 1538 n. 3 (11th Cir.1989) (Johnson, J. concurring in part and dissenting in part) (citing studies suggesting that the accuracy of polygraph results may decline when the examinee induces muscle tension, such as by pressing his or her toes to the ground during questioning); Congress of the United States, Office of Technology Assessment, Technical Memorandum, *Scientific Validity of Polygraph Testing A Research Review and Evaluation* (1983), attached as Ex. A, to The Government's Memorandum of Law in Response to Defendant Lech's Motion In Limine to Admit Polygraph Evidence, at 5 (polygraphs are theoretically susceptible to countermeasures such as bio-feedback and physical movement). *But see* Norman Ansley, *The Validity and Reliability of Polygraph Decisions in Real Cases,* 19 Polygraph 169 (1990), attached as Ex. G to Schapiro Decl. (suggesting that a review of cases from the 1980's indicates a 97–98% accuracy rate).