UNITED STATES of America, Appellee,

v.

David KWONG, also known as George Kwong, also known as Ken Chan, and also known as Zura Kwong, Defendant–Appellant.

No. 208, Docket 95–1093.

United States Court of Appeals,
Second Circuit.

Argued Oct. 5, 1995.

Decided Oct. 23, 1995.

Lawrence H. Schoenbach, New York City (Georgia J. Hinde, of counsel), for Defendant–Appellant.

Leslie R. Caldwell, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY, (Zachary W. Carter, United States Attorney, Susan Corkery, Assistant United States Attorney, of counsel), for Appellee.

Before: ALTIMARI, McLAUGHLIN and PARKER, Circuit Judges.

McLAUGHLIN, Circuit Judge:

David Kwong, allegedly a James Bond "wannabe," was charged with an attempt to murder Assistant United States Attorney Catherine Palmer, in violation of 18 U.S.C. § 1114, by sending her a booby-trapped briefcase. After a jury trial in the Eastern District of New York (I. Leo Glasser, *Judge*), Kwong was convicted and sentenced. We reversed on appeal, finding that the district court had improperly instructed the jury regarding proof of specific intent to kill. *United States v. Kwong,* 14 F.3d 189, 194–95 (2d Cir.1994) (*"Kwong I"*). Kwong was re-tried (Raymond J. Dearie, *Judge*), and was again convicted and sentenced. He now appeals from this second judgment of conviction and sentence.

Kwong raises numerous issues on this appeal. We write only to address whether the district court erred by: (1) admitting an in-court eyewitness identification; (2) declining to give an alibi charge; and (3) refusing to admit the results of a polygraph examination. We have fully considered the other claims advanced on this appeal, and find them to be without merit.

Having set forth the colorful background of this case in considerable detail in *Kwong I*, we see no need to rehearse the entire story. We will mention only those facts, adduced at the retrial, which are relevant to the issues considered in this opinion.

## I. *Eyewitness Identification*

George Williams, a postal employee who worked at a mobile post office in lower Manhattan, testified that just prior to closing on January 26, 1990, an Asian man sent a large package to Catherine Palmer via express mail. The man spoke English, wore glasses, and insisted on mailing the package "as soon as possible," even though Williams had no scale to weigh it. At the first trial Williams was unable to identify Kwong, either from photographs or in person, as the man who mailed the package.

In a surprising about-face, however, Williams testified at the retrial that he now had experienced a "glimmer of recognition" on seeing Kwong again, and he identified him as the man who mailed the package to Catherine Palmer five years earlier. Upon defendant's motion, the district court conducted a *Wade* hearing to determine whether the in-court identification should be stricken. At the hearing, Williams emphatically confirmed that, although he had not recognized Kwong at the first trial, at the retrial he "made eye contact [with Kwong] and through that eye contact the recognition was there." Specifically, his memory was "jogged" after observing in Kwong's eyes the "same energy [and] anxiousness" he saw in the eyes of the man who mailed the package.

At the conclusion of the hearing, the court denied Kwong's motion to strike, finding that there was sufficient independent basis for Williams's belated in-court identification:

[A]fter considering [Williams's] testimony [at trial], the testimony ... at the *Wade* hearing, having reread again the reports of interviews, statements made by him to the investigating agents and inspectors, I have concluded that there is an adequate independent basis to support the in-court identification.

I've also applied what I call, as I understand it, the total[ity] of the circumstances test to satisfy myself there is sufficient reliability to the in-court identification, and concluded for all those reasons and a few others, I also applied something akin to [Fed.R.Crim.P.] 29 standards, if you will, because I think I have the authority and responsibility to do that, namely, whether a reasonable juror under the circumstances could credit the in-court identification. And not being able to answer that question in the negative I concluded that it's been beyond my province to strike the in-court identification and it is a matter for the fact finders.

Defense counsel fully cross-examined Williams regarding his in-court identification. Significantly, the government did not refer to Williams's testimony in its summation. In charging the jury, the district court instructed:

You've heard the testimony of certain witnesses who identified the defendant at one time or another. An identification is an expression of belief on the part of the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and later to make a reliable identification of the defendant.

You, the jury must of course carefully scrutinize any identification testimony. You've heard the arguments of counsel on this subject and I will not repeat them all here. I will only suggest to you that in determining the reliability of an identification, you should consider the following matters:

Did the witness have the ability to see the offender at the time of the offense? Has the witness's identification of the defendant as the offender been influenced in any way? Has his identification been unfairly

suggested by events that have occurred since the time of the offense? Is his or her recollection accurate? Has the witness failed to identify the defendant on any prior [occasion]?

You should also consider how much time has elapsed between the observation and the identification. In addition, you should consider the credibility of an identification witness just as you would any other witness.

Kwong now asserts that the district court committed reversible error when it permitted Williams's in-court identification.

▮ In evaluating whether an in-court identification is constitutionally permissible, courts generally engage in a two-step inquiry. First, the court determines whether the pre-trial identification procedures were impermissibly suggestive. If they were, the court then determines whether the in-court identification was so tainted by the pretrial procedures as to be unreliable under the totality of the circumstances. This distils to an inquiry into whether the in-court identification was independently reliable. *Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1968, 131 L.Ed.2d 858 (1995); *United States v. Tortora*, 30 F.3d 334, 338 (2d Cir.1994).

▮ We will assume, without deciding, that Williams's opportunity to view Kwong at the first trial was overly suggestive. We find, nonetheless, that the in-court identification at the retrial was sufficiently reliable to be evaluated by a properly instructed jury. Factors for assessing reliability include: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification. *Manson v. Brathwaite*, 432 U.S. 98, 114–16, 97 S.Ct. 2243, 2253–54, 53 L.Ed.2d 140 (1977); *Wong*, 40 F.3d at 1359; *Tortora*, 30 F.3d at 338. These factors must be assessed under " 'the totality of the circumstances, and the linchpin of admissibility is reliability.' " *Tortora*, 30

F.3d at 338 (quoting *United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993)).

▮ Under the circumstances here, the district court properly concluded that the identification was reliable. Although Williams had only four to five minutes to view the man who mailed the package, he focused directly on that individual during the encounter—particularly because the patron spoke directly to him and insisted on mailing the package even though it could not be weighed. Williams provided a detailed description of the customer from which a composite sketch was prepared. The district court noted that this sketch (which purportedly resembled an earlier photograph of Kwong that was in evidence) was "on the money." Williams also insisted, both during the retrial and the *Wade* hearing, that his identification of Kwong was firm.

Kwong argues that the passage of five years between the mailing of the package and the identification, as well as Williams's earlier inability to recognize Kwong, demonstrate the unreliability of the identification. On balance, however, these considerations are outweighed by the other factors evidencing reliability. *See Tortora*, 30 F.3d at 338–39 (holding that five-year period between crime and identification and lack of accurate description were outweighed by strong indicia of reliability); *United States v. Hill*, 967 F.2d 226, 232–33 (6th Cir.) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 438, 121 L.Ed.2d 357 (1992). Moreover, the district court's charge to the jury provided substantial guidance on how to evaluate eyewitness identification testimony. Thus, we find that Williams's in-court identification of Kwong was sufficiently reliable to be admitted.

## II. *Alibi Charge*

The gun used in the booby-trapped briefcase sent to Catherine Palmer was purchased at the Norwalk Gun Exchange, a gun store located in Connecticut. David Chute, the owner of the store, testified that on November 14, 1989, between approximately 11 a.m. and 1 p.m., an Asian customer entered the

store and inquired about small rifles. After Chute showed him several rifles, the customer left without buying anything. The following day, again between approximately 11 a.m. and 1 p.m., the same customer returned to the store and bought the rifle that was the heart of the booby-trap.

Kwong contended that he could not have been at the Norwalk Gun Exchange between 11 a.m. and 1 p.m. on November 14, because he was picking up his son in Queens, forty-five miles away. To prove this, Kwong called Muriel Fisher, the educational director of the Queens nursery school attended by Kwong's son, who testified that only Kwong and his wife were authorized to pick up their son from school. Fisher further testified that on November 14, 1989, Kwong's son attended school, which was let out at noon. Kwong's wife also testified that according to her own records, which she used to keep track of sick leave and vacation days, she was at work on November 14.

Based on this testimony, Kwong requested that the court give an alibi charge to the jury. The court, however, declined to give an alibi instruction, stating that this was "not the typical alibi defense." Kwong now asserts that the court's decision constituted reversible error.

■ The propriety of jury instructions is a question of law which we review *de novo*. *United States v. Dove*, 916 F.2d 41, 45 (2d Cir.1990). A criminal defendant is generally entitled, upon proper request, to a jury charge that reflects "any defense theory for which there is a foundation in the evidence." *United States v. Bryser*, 954 F.2d 79, 87 (2d Cir.), *cert. denied*, 504 U.S. 972, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992). The trial court may refuse to give an alibi instruction, however, where the alleged alibi evidence is not inconsistent with guilt, *see id.; United States v. Thomas*, 34 F.3d 44, 50 (2d Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994), and we conclude that is the situation here.

■ Kwong's evidence is not inconsistent with his shopping for the gun at the time in question on November 14. A jury could reasonably conclude that Kwong was able to

pick up his son in Queens at noon and still drive forty-five miles to Norwalk, Connecticut by approximately 1 p.m. Moreover, even assuming that the evidence did suggest that Kwong did not purchase the gun himself, there was still sufficient evidence that he committed other "substantial steps" in the murder attempt. *See Braxton v. United States*, 500 U.S. 344, 349, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991) (holding that guilt of an attempted murder requires proof that the defendant "must have taken a substantial step towards that crime, and must also have had the requisite *mens rea* "). The jury could reasonably find that Kwong constructed the booby-trap, as evidenced by the numerous "how-to" manuals seized from his apartment. *See Kwong I*, 14 F.3d at 194 ("[Kwong's] library included books on weapons, booby-traps and other sabotage devices—not the type of library accumulated by the average citizen."). As discussed in section I., *supra*, there was also evidence that Kwong sent the package to Catherine Palmer. Further, there was ample proof of Kwong's motive and attempt to frame another individual for the crime. *See Kwong I*, 14 F.3d at 192. Therefore, because Kwong's alleged inability to shop for the gun on November 14 was not a defense to the attempt on Palmer's life, the court, in its discretion, properly refused to give an alibi charge. *See Thomas*, 34 F.3d at 50 (refusal to give alibi charge not error because defendant's alleged alibi was not a defense to the crime charged); *Bryser*, 954 F.2d at 87 (same).

### III. *Polygraph Evidence*

In 1991, a certified polygraph examiner administered a polygraph examination of Kwong who "passed" the test. The relevant questions posed to and responses given by Kwong were as follows:

1. Did you conspire with anyone to send that package to Assistant United States Attorney Catherine Palmer? NO.

2. Were you the one that sent that package to Assistant United States Attorney Catherine Palmer? NO.

3. Do you know for sure who used a driver's license in the name of Wing

Yeung Chan to buy the gun in question? NO.

Kwong made a motion to have the examiner testify to these questions and answers and to offer his opinion that Kwong was truthful. The district court denied the motion, concluding that in balancing probative value and relevance, "two of the questions without knowing more, perhaps the third, but questions one and two are of dubious significance ... no matter how they are answered."

Kwong now argues that this evidentiary ruling was erroneous, in light of the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See, e.g., United States v. Posado,* 57 F.3d 428, 434 (5th Cir.1995) (holding that polygraph evidence is no longer *per se* inadmissible after *Daubert* ).

Pre-*Daubert,* this Court suggested that under the test articulated in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), polygraph evidence was inadmissible. *United States v. Rea,* 958 F.2d 1206, 1224 (2d Cir.1992); *United States v. Bortnovsky,* 879 F.2d 30, 35 (2d Cir.1989). Under *Frye,* the touchstone for admissibility of scientific evidence is whether the scientific technique in question is generally accepted in the relevant scientific community. 293 F. at 1014. In *Daubert,* the Supreme Court held that the Federal Rules of Evidence, rather than the *Frye* test, now govern the admissibility of scientific evidence in federal trials. *See Daubert,* —— U.S. at —— – ——, 113 S.Ct. at 2794–95. Specifically, the Court held that *Frye's* "rigid 'general acceptance' requirement would be at odds with the 'liberal thrust' of the Federal Rules [of Evidence] and 'their general approach of relaxing the traditional barriers to "opinion" testimony.' " *Id.* at ——, 113 S.Ct. at 2794 (citation omitted); *see also United States v. Lech,* 895 F.Supp. 582, 583–84 (S.D.N.Y. 1995).

■ The Federal Rules of Evidence, although concededly more liberal than the *Frye* test, still require a determination that the proffered scientific evidence is both relevant and reliable. *See Daubert,* —— U.S. at ——, 113 S.Ct. at 2795; Fed.R.Evid. 401, 403, and 702. Federal Rule of Evidence 702 provides that scientific evidence, in the form of an expert "opinion or otherwise," may be admitted if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Even if scientific evidence passes muster under Rule 702, however, it may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R.Evid. 403; *see Lech,* 895 F.Supp. at 584– 86.

■ Even assuming that polygraph results are admissible under Rule 702 (and we are unwilling to so hold because the specific testimony here would not likely "assist the trier of fact"), we nonetheless find that the results in this case should be excluded under Rule 403. Here, the district court was correct that the questions posed to Kwong were inherently ambiguous no matter how they were answered.

Question one asks whether Kwong conspired with anyone to send the package to Palmer. Kwong, however, was not charged with conspiracy and thus even a truthful "no" response would not preclude a guilty verdict on attempted murder.

Question two asks whether Kwong was the one who sent the package to Palmer. Again, even if Kwong honestly answered that he did not personally mail the package, this does not mean that he did not construct the boo-by-trap and arrange to have it mailed.

Although we agree with the district court that question three is somewhat less ambiguous, the phrasing "[d]o you know for sure" renders the answer to this question chimerical at best. Thus, there is a substantial possibility that the admission of the polygraph results would mislead and confuse the jury, outweighing any probative value they may have. *See Lech,* 895 F.Supp. at 584–86. We therefore find that the district court did not abuse its discretion in excluding the polygraph results in this case.

We note, however, that the "legal Pandora's box" which the Fifth Circuit opened in *United States v. Posado,* 57 F.3d 428, 436 (5th Cir.1995), is not yet agape in this Cir-

cuit. The record before us simply does not provide the proper opportunity to explore the validity of polygraph evidence under Rule 702.

We have fully considered the other claims raised on this appeal and find them to be without merit.

### CONCLUSION

We find that the district court did not err in admitting the in-court eyewitness identification, declining to give an alibi instruction, or refusing to admit the results of the polygraph examination. Accordingly, the judgment of conviction and sentence is

AFFIRMED.