108 F.3d 1370
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Lola SHODEINDE, also known as Sylvester Jacowen, Defendant,
Jimmy Fasheun-Tokunbo, also known as Michael Mahoney,
Defendant-Appellant.
 No. 96-1512.
 United States Court of Appeals, Second Circuit.
 March 21, 1997.
 
 FOR APPELLEE: PAUL A. ENGELMAYER, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Craig A. Stewart, Assistant United States Attorney, of counsel).
 FOR APPELLANT: CHARLES A. ROSS, New York, N.Y. (Brafman Gilbert & Ross, P.C., New York, NY).
 Present JACOBS, LEVAL and CABRANES, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.
 
 
 3
 Jimmy Fasheun-Tokunbo appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York (Sotomayor, J.) on July 30, 1996. FasheunTokunbo was sentenced to one year and one day of imprisonment, a three year term of supervised release, and $300 in special assessments. Judge Sotomayor also ordered Fasheun-Tokunbo to pay restitution of $2,615 to the Internal Revenue Service ("IRS"). Fasheun-Tokunbo contends on appeal that the district court erred in admitting certain identification testimony against him. For the reasons that follow, we find this claim to be meritless.
 
 
 4
 Fasheun-Tokunbo and his co-defendant Lola Shodeinde were charged with one count of conspiracy to defraud the United States and the IRS by submitting false claims for tax refunds in violation of 18 U.S.C. § 286, and multiple counts of making false claims for tax refunds in violation of 18 U.S.C. § 287. Shodeinde pled guilty and Fasheun-Tokunbo proceeded to trial.
 
 
 5
 The government sought to establish at trial that between April and September 1994, Fasheun-Tokunbo and Shodeinde executed a scheme to defraud the United States and the IRS by filing fraudulent tax returns in the names of sixteen third party taxpayers and directing the IRS to send refunds due on those returns to mail boxes that the defendants had leased. The proof at trial included: (1) evidence that the defendants had access, through their jobs as social workers for the New York City Human Resources Administration, to the names, addresses, and Social Security numbers of the sixteen taxpayers; (2) expert handwriting testimony that the defendants had authored much of the writing on the sixteen returns; (3) testimony that at the time of their arrests, each of the defendants was carrying a key to a leased mailbox to which the tax refunds had been sent; (4) testimony by IRS agents that prior to the arrest of Fasheun-Tokunbo, the proprietors of two separate mail box establishments, Leonard Cecere and Eng Sung "Joe" Wong, had identified Fasheun-Tokunbo as the party who controlled a rented mail box at each of their establishments to which the tax refunds had been sent; and (5) a separate in-court identification of Fasheun-Tokunbo by Cecere. Fasheun-Tokunbo's challenges on appeal concern only the identification testimony (both prior and in-court) of Cecere and Wong.
 
 
 6
 Prior to trial, the district court held a Wade hearing to determine the admissibility of the identification testimony of Cecere and Wong. Special Agent Philip Cousin testified that following the arrest of Shodeinde, agents went to the Human Resources Administration, obtained a work-identification card bearing a photograph of Fasheun-Tokunbo, and went to the two mailbox locations to show the photo to the proprietors. Cecere stated that the photograph looked like the person who had rented the mailbox to which the refunds had been sent, but that he was not absolutely certain. Wong identified the photograph as that of the individual who had opened up the fraudulent mailbox at his store. According to Agent Cousin, he used a single photograph, rather than take time to compose a photo array, because he believed that Fasheun-Tokunbo might flee or go into hiding following the arrest of Shodeinde, and that therefore time was of the essence.
 
 
 7
 Cousin also testified that about four weeks after the arrests, he showed a six-photograph array to Cecere and Wong. The photograph of Fasheun-Tokunbo in the array was a different photo than the one shown initially to Cecere and Wong. Both Cecere and Wong picked out Fasheun-Tokunbo's photograph.
 
 
 8
 Wong testified at the Wade hearing that box 213 at his store (to which the tax refunds had been sent) had been rented by an individual Wong knew as Michael Mahoney. Wong stated that he had seen Mahoney in his store several times, and that when Mahoney had renewed box 213, Mahoney was the only customer in the store and had stood in front of Wong for three to five minutes. Wong also testified that he had picked out Mahoney's photograph from the array shown to him by Cousin, though he believed that this occurred before the time he was shown the single photograph. Wong recalled that the man who renewed the box was a black male, who was pretty tall, a little heavy, and spoke with an accent (a description consistent with Fasheun-Tokunbo's appearance).
 
 
 9
 Cecere also testified that he had rented out box 266 at his establishment to a Michael Mahoney, whom he described as a brown-skinned, heavy-set, well-built man weighing about 230 pounds, standing about 5'10"', and speaking with a slight accent. Cecere stated that he had seen Mahoney about three times. On the final occasion, Cecere and Mahoney had an argument when Cecere refused to give Mahoney mail that had been sent to box 266, because the envelopes evidently contained U.S. Treasury checks addressed to other individuals not registered for the box. Mahoney then attempted to bribe Cecere to give him the mail, but Cecere refused, and invited Mahoney to return when he could claim the envelopes in the presence of a postal inspector. At the time of this confrontation, Mahoney was the only customer in the store.
 
 
 10
 On July 12, 1995, Judge Sotomayor ruled that the use of the single photograph to make the initial identification of Fasheun-Tokunbo was justified by exigent circumstances and had not been impermissibly suggestive. Judge Sotomayor also held that even if the initial identification had been unduly suggestive, the government would still be permitted to elicit in-court identifications at trial because both Cecere and Wong had an independent, reliable basis for recognizing Fasheun-Tokunbo.
 
 
 11
 Fasheun-Tokunbo will prevail on his challenge to the identification evidence, only if the pre-trial identification procedure was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [he] was denied due process of law." United States v. Bautista, 23 F.3d 726, 729 (2d Cir.), cert. denied, 115 S.Ct. 174 (1994). Thus, even if the procedure was impermissibly suggestive, the identification evidence may still be admissible if the totality of the circumstances indicate that the identification was reliable. Id. at 729-30; United States v. Concepcion, 983 F.2d 369, 377-78 (2d Cir.1992), cert. denied, 510 U.S. 856 (1993). Moreover, any error in admitting identification testimony is subject to harmless error analysis. Concepcion, 983 F.2d at 379.
 
 
 12
 Fasheun-Tokunbo challenges the use of the single photograph to identify him on the day of his arrest. The display of a single photograph does not necessarily require suppression of the identification, especially if the presence of exigent circumstances will justify the use of such a procedure. See United States v. Bubar, 567 F.2d 192, 197 (2d Cir.) (citations omitted), cert. denied, 434 U.S. 872 (1977). The record of the Wade hearing sufficiently supports Judge Sotomayor's determination that exigent circumstances justified the initial identification procedure utilized in this case. It was reasonable for the agents to have concluded that an additional photographic identification of Fasheun-Tokunbo was needed before effecting an arrest based solely on the word of an alleged co-conspirator who had just been taken into custody. Moreover, Agent Cousin's conclusion that time was of the essence, and that there was not sufficient time to put together an array of photographs was justified in light of the danger that Fasheun-Tokunbo might flee or hide.
 
 
 13
 Even if the single photograph procedure had not been justified by exigent circumstances and had been unduly suggestive, we agree with Judge Sotomayor that in any event both Cecere and Wong had an independent reliable basis to identify Fasheun-Tokunbo. The factors to be considered in determining the reliability of photographic identification evidence include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the identification. See Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977); Neil v. Biggers, 409 U.S. 188, 199-200 (1972); see also United States v. Kwong, 69 F.3d 663, 666 (2d Cir.1995), cert. denied, 116 S.Ct. 1343 (1996).
 
 
 14
 Taken together, and viewed in light of the totality of the circumstances, these five factors indicate that Cecere and Wong each had a sufficiently independent and reliable basis upon which to identify Fasheun-Tokunbo. As detailed above, both Cecere and Wong had more than ample opportunity to view and interact with Fasheun-Tokunbo prior to being shown the single photograph. Both of them also had a sufficient degree of attention given that Cecere and Wong each had at least one extended interaction with Fasheun-Tokunbo at a time when no other customers were in their respective establishments.
 
 
 15
 Cecere and Wong also gave reasonably accurate, though admittedly general, descriptions of Fasheun-Tokunbo, and both men had seen Fasheun-Tokunbo--then known to them as "Mahoney"--not long before his September 28, 1994 arrest. Finally, Cecere and Wong displayed an adequate degree of certainty in their initial identifications of Fasheun-Tokunbo. Cecere stated that though he was not absolutely certain, the photograph looked like the man who had rented the box at issue. Wong identified the photograph as that of the individual who had opened up the box in his store. Though Fasheun-Tokunbo makes much of Wong's failure to make an in-court identification, this fact does not indicate that the initial identification procedure was improper, especially in light of the ten month period between the trial and the last time Wong had seen Fasheun-Tokunbo.
 
 
 16
 As Fasheun-Tokunbo points out, there are a number of discrepancies in the testimony of Agent Cousin and the two witnesses; still, we conclude that Judge Sotomayor acted properly in admitting the prior identification testimony and in allowing the in-court identification by Cecere. In light of the other evidence presented at trial, even were we to assume arguendo that the identification testimony should have been excluded, any such error was harmless.
 
 
 17
 We have considered all of Fasheun-Tokunbo's contentions on this appeal and have found them to be without merit. The judgment of the district court is AFFIRMED.