OPINION OF THE COURT
PER CURIAM.
Wing Hong Kwong, proceeding pro se, petitions for review of an order of the Board of Immigration Appeals (“BIA”) vacating the Immigration Judge’s (“IJ”) decision deferring his removal under the Convention Against Torture (“CAT”). We will deny the petition for review.
Kwong is a native of Hong Kong and a citizen of China. He came to the United States in 1968 as a visitor and became a lawful permanent resident in 1970. In 1988, Kwong pleaded guilty in federal court to conspiracy to possess and export munitions without the requisite license and possession of unregistered firearms. Before sentencing, Kwong was indicted, tried, and convicted in 1992 of attempting to murder an Assistant United States Attorney. The latter conviction was reversed on appeal due to an erroneous jury instruction. United States v. Kwong, 14 F.3d 189, 195-96 (2d Cir.1994). On retrial, Kwong was convicted again. United States v. Kwong, 69 F.3d 663 (2d Cir.1995). Kwong received an aggregate sentence of 262 months in prison.
*702 In 2006, the Immigration and Naturalization Service issued a notice to appear charging that Kwong was subject to removal because he was convicted of a crime of violence, which constitutes an aggravated felony under the immigration statute, and because he was convicted of a firearms offense. Kwong sought relief from removal under the CAT.[1]
In support of his CAT claim, Kwong testified that he worked for the Drug Enforcement Agency (“DEA”) from July 1988 to May 1989 as an undercover informant. Kwong explained that he went into Chinese communities, made contacts with criminal elements, particularly those involved in drug trafficking and organized crime, and reported back to the DEA. He stated that his work culminated in the prosecution of four major cases. Kwong further testified that he did similar work for the Federal Bureau of Investigation (“FBI”) from June 1989 to August 1991, and that his work resulted in several arrests.
Kwong stated that he feared that he would be tortured in China because individuals who were convicted as a result of his work have been deported to China and these individuals have extensive criminal roots there. Kwong testified that the FBI arrested a Chinese drug kingpin named Johnny Kong, whose associate attacked Kwong in prison in 1993 and told Kwong that he would wait for him in Hong Kong and kill him there. Kwong also testified that he has received other threats. He stated that in 1991, while working for the FBI, someone shot at his car.[2] Kwong stated that an FBI agent recommended his placement in the federal witness protection program, but he was arrested before he could enter the program.
Kwong further testified that he believes that the Chinese government will protect him only if he agrees to work against American agencies. Kwong believes that he will be detained if he returns to China, and that he will be tortured if he refuses to cooperate with government officials. Kwong stated that Chinese officials will not care about his criminal record, but that they will be interested in the information that he can give them. Kwong believes that the Chinese government will know that he worked for United States law enforcement agencies due to the notoriety of his criminal case.
The IJ noted that there was no direct evidence of Kwong having provided intelligence or information to the FBI or DEA and stated that he was not willing to accept Kwong’s testimony on its face that he was as crucial to the government as he testified. The IJ also questioned whether Chinese officials would be aware that Kwong helped the government in 1991, and stated that Kwong’s alleged notoriety based on his criminal conviction cut against his claim that foreign governments would think that he cooperated with the United States government.
The IJ, however, recognized the widespread use of torture by China against detainees and prisoners reflected in the background evidence, and noted that it is rare to find direct evidence that an alien would likely be tortured in a proposed country of removal. The IJ stated that he *703 would assume, and that he believed, that Kwong would be detained upon his arrival given that he has lived here for 40 years and has a serious criminal conviction, and given China’s propensity to engage in intrusions on the lives of its citizens and high incidence of torture. The IJ was not convinced that Chinese officials would know of Kwong’s cooperation with the United States government unless Kwong tells them, but he believed that, in light of the background evidence of torture, Kwong could be subjected to pain or suffering upon being interrogated. The IJ thus deferred Kwong’s removal.
The BIA sustained the Government’s appeal. The BIA agreed that the record reflected that torture remained widespread in Chinese detention facilities, but stated that fact only becomes relevant if Kwong established that it was likely that he would be detained. The BIA stated that the only evidence that China may detain criminal returnees was Kwong’s testimony that he had a friend who was released from prison and returned to China, that the Chinese government detained him, and that Kwong never heard from him again. The BIA found this evidence insufficient, noting that the basis for Kwong’s assertion that the friend was detained was unclear, and that Kwong gave no details about the friend’s circumstances to indicate whether the friend was similarly situated to him.
The BIA further stated that nothing in the record supported Kwong’s statement that the Chinese government would find out that he worked for the FBI, indicated that China is likely to detain returnees who lived in the United States for a long time, or showed that China has detained or is likely to detain criminal returnees. The BIA concluded that the IJ’s finding that Kwong is likely to be detained was clearly erroneous. The BIA further concluded that, even if Kwong had shown that he is likely to be detained, he had not shown that Chinese authorities would have a specific intent to torture him. The BIA decided that Kwong failed to meet his burden of proving that it is more likely than not that the Chinese government will torture him. The BIA also decided that Kwong did not meet his burden of proof on his CAT claim based on harm by organized crime figures in China. This petition for review followed.
We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because the basis for Kwong’s removal is his conviction for an aggravated felony, our jurisdiction is limited under the Real ID Act to constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(C) — (D); Pierre v. Attorney General, 528 F.3d 180, 184 (3d Cir.2008).
Kwong has not presented any constitutional claims or questions of law in his brief for our review. Rather, Kwong challenges the BIA’s assessment of the evidence and seeks to bolster his claim with materials and information that are not part of the administrative record. These arguments are not properly before us. Even if we had jurisdiction to consider the evidence supporting Kwong’s CAT claim, our review is limited to the evidence contained in the administrative record. 8 U.S.C. § 1252(b)(4)(A); Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir.2004).[3]
Accordingly, we will deny the petition for review. Kwong’s motion to file his *704 brief under seal and motions to supplement the record are denied.

. The IJ initially terminated the proceedings without prejudice because Kwong's earliest release date was not until mid-May 2010, and the IJ concluded that his CAT claim was not ripe. The BIA sustained the Government’s appeal, finding that the Government was prejudiced by the termination.

. Although Kwong testified that the shooting was in 2001, he clarified on cross-examination that he worked for the FBI until 1991. It appears that the shooting was in 1991. Similarly, Kwong initially testified that the prison attack occurred in 2003, but he clarified on cross-examination that the attack was in fact in 1993.

. Kwong does assert that the BIA "incorrectly used the standard set forth in 8 C.F.R. § 1208.18(a)(1) to makes its assessment on whether [he] would be tortured with the acquiescence of the Chinese authorities” and appears to assert that the BIA applied a higher burden of proof than Congress intended. See Pet’r’s Br. at 12. Kwong has not developed arguments on these points or shown that the BIA erred.