104 F.3d 352
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Godwin STANISLAUS, Defendant,
Sangarasay Sangarapillai, Defendant-Appellant.
 No. 96-1132.
 United States Court of Appeals, Second Circuit.
 Oct. 31, 1996.
 
 Appearing for Appellant: Robert S. Wolf, New York, New York.
 Appearing for Appellee: Sung-Hee Suh, Assistant United States Attorney, Eastern District of New York (Zachary W. Carter, United States Attorney, David C. James, Assistant United States Attorney, of counsel), Brooklyn, New York.
 Before OAKES, VAN GRAAFEILAND and WINTER, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 Sangarasay Sangarapillai appeals from a sentence of 87 months imprisonment, four years supervised release, and a $50 special assessment, imposed by Judge Sifton after Sangarapillai pleaded guilty to conspiracy to distribute and to possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841 and 846. On appeal, Sangarapillai argues that the district court erroneously refused to compel the government to make a motion pursuant to 18 U.S.C. § 3553(e) and United States Sentencing Guidelines § 5K1.1. Sangarapillai also argues that the district court erred in denying his request for the benefits of the "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. We disagree and affirm.
 
 
 4
 Sangarapillai argues that he should prevail on his application to compel a government motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, because, he claims, the government withheld the motion in bad faith. See United States v. Knights, 968 F.2d 1483, 1485-87 (2d Cir.1992); United States v. Rexach, 896 F.2d 710, 713 (2d Cir.), cert. denied, 498 U.S. 969 (1990). The agreement provided that "[t]he defendant will provide truthful, complete and accurate information, and will cooperate fully with the [U.S. Attorney's] Office," and that the prosecutor's "determination of whether the defendant has cooperated fully and provided substantial assistance, and the Office's assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding on him." We have held under similar agreements that "[p]rosecutors have broad latitude," United States v. Resto, 74 F.3d 22, 25-26 (2d Cir.1996), and that " '[b]ecause the prosecution often is in the best position to evaluate the quality of a defendant's cooperation and to decide whether to make a substantial-assistance motion, this decision, like other prosecutorial determinations, may be subjected to only limited review,' " id. at 25-26 (quoting United States v. Knights, 968 F.2d at 1487).
 
 
 5
 After a hearing, the district court found that:
 
 
 6
 the government, faced with a witness of this sort, that is one who reveals things only in pieces over time, is perfectly within its rights in concluding that the value of such a witness is so small given the opportunity on cross-examination to impeach him that this is not the kind of witness they want or--and not the kind of individual they should reward by a motion for departure on grounds of substantial assistance.
 
 
 7
 We agree. The district court was faced with conflicting testimony of Sangarapillai and agent Scott and was entitled to believe Scott over Sangarapillai and his evidence. For example, the district court could reasonably have concluded from Scott's testimony that after Sangarapillai had entered into the cooperation agreement Sangarapillai changed his story about Diogenes Perez's involvement in a drug transaction to make it more incriminating of Perez. Nor was the district court bound to credit Sangarapillai's notes or polygraph. In particular, the questions asked by the polygraph examiner--(1) "[D]id you expect Johnny Perez to be present for the heroin delivery to the CI [the informant named "Peter"] on the night of March 1, 1994," (2) "Did you tell the government all you knew about Johnny Perez in this drug conspiracy to the best of your ability," and (3) "[D]id you tell the government all of your prior illegal drug dealings to the best of your ability"--are inherently ambiguous; even truthful "yes" answers would not establish that Sangarapillai volunteered information earlier rather than belatedly and would not establish that he provided complete details of the transactions of which he "[told] the government." Cf. United States v. Kwong, 69 F.3d 663, 668 (2d Cir.1995), cert. denied, 116 S.Ct. 1343 (1996) (no abuse of discretion in refusing to admit results of polygraph examination where questions were ambiguous and defendant's "no" answer to having prepared package, even if truthful, would not preclude defendant's having prepared booby-trapped briefcase). The district court's findings that there was no bad faith and that substantial cooperation had not been established were therefore not clearly erroneous.
 
 
 8
 For similar reasons, the district court properly denied Sangarapillai the benefits of the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, because it was "not persuaded that he has as of today, the day of the sentence, truthfully given all information he has about the offense." Judge Sifton based this conclusion not only on the defendant's history of lack of candor but also on "the defendant's own testimony and conduct on the stand before [him]." Given the arguable inconsistencies the government points out in that testimony (as to, for example, when Sangarapillai had first disclosed his involvement in a June 1993 heroin transaction) and, more importantly, Judge Sifton's opportunity to observe Sangarapillai as a witness first-hand, the factual basis for Judge Sifton's conclusion is not clearly erroneous.
 
 
 9
 Given that factual record, Sangarapillai is not entitled to the benefits of the safety valve, which requires, inter alia, that:
 
 
 10
 not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan....
 
 
 11
 18 U.S.C. § 3553(f)(5); see also U.S.S.G. § 5C1.2. The district court therefore correctly concluded that the safety valve provisions did not apply to Sangarapillai.
 
 
 12
 Finally, Sangarapillai argues that we must reverse because the sentence was based on uncounselled debriefing sessions in violation of our recent holding in United States v. Ming He, 94 F.3d 782 (2d Cir.1996). He further contends that he did not waive this issue expressly or impliedly.
 
 
 13
 In Ming He, we held that "when a defendant is sentenced--unless he specifically alleges that he was denied the assistance of counsel and asks for a hearing on this subject--the issue is waived." 94 F.3d at 794. Sangarapillai contends that his request to contest the government's refusal to move for a downward departure under § 5K1.1 "serves to encompass the bad faith and 'unseemly' practice by the government of holding debriefing sessions absent counsel, and this fulfills the preservation requirement of Ming He." However, Sangarapillai did not "specifically allege" a denial of assistance of counsel, nor did he request a hearing "on this subject." Furthermore, after he requested a hearing on the government's good or bad faith, he never raised the assistance-of-counsel claim at that hearing or in his initial brief on appeal. In light of these circumstances, we find that Sangarapillai waived his right-to-counsel argument under Ming He.
 
 
 14
 We therefore affirm.