**UNITED STATES of America,**

v.

**Mitchell MARSHALL, Defendant.**

**No. CR 97–109 ADS.**

United States District Court,
E.D. New York.

Dec. 20, 1997.

Zachary W. Carter, United States Attorney, E.D.N.Y., Garden City, NY by Cecilia Gardner, Assistant U.S. Attorney, for U.S.

D. Andrew Marshall, New York, City, for defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On May 2, 1997, the defendant, Mitchell G. Marshall ("Marshall" or the "defendant"), pled guilty to one count each of conspiracy to commit credit card fraud and credit card fraud in violation of 18 U.S.C. §§ 1029(a)(2), (b)(2) and (c)(1). On February 28, 1997, Mark Henderson ("Henderson") pled guilty to one count of knowingly and intentionally trafficking in one or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2) and (c)(1). According to the pre-sentence report prepared by the United States Probation Department, Henderson was approached by Mitchell and asked to provide credit card numbers from First Card Credit Services ("FCCS") for a fee. Presentence Investigation Report dated June 26, 1997 ("PSI") ¶ 3. Henderson was an employee of FCCS, located in Uniondale, New York, which provides credit card services for First Chicago Bank, located in Chicago, Illinois. Id. ¶ 2. From May 1996 through December 1996, Henderson illegally obtained approximately 2,000 credit card numbers from FCCS and gave them to Marshall for which Marshall paid Henderson between $15 and $25 per card number. Id. ¶ 4. According to the presentence report, the illegal use of the credit card numbers provided by Henderson to Marshall has resulted in an actual loss of $1,386,361.03, and an additional attempted fraud of $357,836.49. Id. ¶ 9. As a result, according to the presentence report, for sentencing guideline purposes, Henderson and Marshall are held accountable for an intended loss of $1,744,197.52. Id. Henderson is scheduled to be sentenced on January 23, 1998.

By letter dated August 8, 1997, Marshall objected, among others, to the calculation of the intended loss, maintaining that he was only one of a number of people to whom Henderson illegally provided credit card numbers. Marshall estimated the amount of loss for which he is responsible at less than $300,000.00.

Subsequently, Marshall identified Damon Hayes ("Hayes"), an incarcerated defendant in a federal correctional facility in North Carolina, as an alleged purchaser of the credit card numbers. Hayes submitted to a polygraph test proposed by the government on the subject of purchasing credit card numbers from Henderson. The government alleges that the polygraph examiner's report indicates that Hayes "was deceptive when he stated he had purchased credit card numbers from Mark Henderson." Government's letter dated November 14, 1997. Presently before the Court are the following two issues: (1) whether the Court may consider the results of Hayes' polygraph examination in sentencing Marshall to rebut Hayes' assertion that he had purchased credit card numbers from Henderson and to rebut Marshall's assertion that there were other purchasers of stolen credit card numbers; and (2) whether the Court can compel the polygraph examination of Henderson.

## I. DISCUSSION

### A. *Hayes polygraph examination*

The issue of the admissibility of polygraph evidence has been controversial. Until recently, the Second Circuit, interpreting *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), has suggested that such evidence is inadmissible. *See United States v. Kwong,* 69 F.3d 663, 668 (2d Cir.1995) (citing cases), *cert. denied,* 517 U.S. 1115, 116 S.Ct. 1343, 134 L.Ed.2d 491 (1996). Under *Frye,* 293 F. at 1014, scientific testimony was required to be generally accepted in the relevant scientific community to be admissible at trial. However, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587–88, 113 S.Ct. 2786, 2794–95, 125 L.Ed.2d 469 (1993), the Supreme Court, effectively overruling *Frye,* held that the Federal Rules of Evidence now govern the admissibility of scientific evidence at trial.

Since *Daubert,* the Second Circuit has yet to squarely address the issue of admissibility of polygraph evidence. In *Kwong,* 69 F.3d at 667–69, the Second Circuit affirmed the district court's refusal to admit the results of a polygraph examination in a criminal trial. The Second Circuit agreed with the district court that the examiner's questions were "inherently ambiguous" and that there was a

"substantial possibility that the admission of the polygraph results would mislead and confuse the jury, outweighing any probative value they may have." *Kwong*, 69 F.3d at 668. Hence, the Second Circuit held that even if the polygraph evidence was admissible under Fed.R.Evid. 702, the evidence should have been excluded under Fed.R.Evid. 403. *Id.* The Second Circuit did note that "[t]he record before us simply does not provide the proper opportunity to explore the validity of polygraph evidence under Rule 702." *Id.* at 669.

■ However, the standards of admissibility of evidence at a criminal trial are inapplicable to sentencing proceedings. It is a well-settled principle that "a sentencing judge … [may] exercise wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed." *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949). *See also United States v. Watts*, 519 U.S. 148, ——, 117 S.Ct. 633, 635, 136 L.Ed.2d 554 (1997). Because "[a] sentence reflects a prediction of future events based largely upon the defendant's past," *United States v. Schipani*, 315 F.Supp. 253, 255 (E.D.N.Y.), *aff'd*, 435 F.2d 26 (2d Cir.1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971), a sentencing court's inquiry traditionally has been "largely unlimited either as to the kind of information … consider[ed], or the source from which it may come," *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

"The Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat.1987, codified the traditional purposes of sentencing, both recognizing the importance of imposing individual sentences, *see* 18 U.S.C. § 3553(a)(1)–(2), and displaying a desire to allow a broad inquiry into relevant information concerning a defendant. *See* 18 U.S.C. § 3661." *United States v. Tejada*, 956 F.2d 1256, 1262 (2d Cir.), *cert. denied*, 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 80 (1992). It is permissible to consider information in sentencing that would be inadmissible for the purpose of determining guilt. *See United States v. Reese*, 33 F.3d 166, 174 (2d Cir.1994) ("when

determining sentence, a sentencing court is free to consider hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in an acquittal"), *cert. denied*, 513 U.S. 1092, 115 S.Ct. 756, 130 L.Ed.2d 655 (1995). Indeed, 18 U.S.C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." In addition, the Federal Rules of Evidence, by their own terms, do not apply to sentencing hearings. *See* Fed.R.Evid. 1101(d)(3); *see also United States v. Fatico*, 579 F.2d 707, 711 (2d Cir. 1978) ("the Federal Rules of Evidence, except those relating to privileges, do not apply to sentencing proceedings"), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 458 (1979).

This principle is echoed in the United States Sentencing Guideline § 6A1.3, which provides that "[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." Thus, "[t]he tradition of providing complete information at sentencing blossomed in a judicial system that granted a district judge enormous flexibility in assessing a suitable penalty." *Tejada*, 956 F.2d at 1263. Hence, these principles do not suggest "any basis for the courts to invent a blanket prohibition against considering certain types of evidence at sentencing." *Watts*, —— U.S. at ——, 117 S.Ct. at 635.

Several circuit courts, including the Second Circuit, have addressed on a case-by-case basis the issue of the admissibility of polygraph testimony at sentencing. In *United States v. Messina*, 131 F.3d 36 (2d Cir. 1997), the defendant submitted polygraph evidence in an attempt to persuade the district court not to impose the "related conduct" sentencing enhancements. After hearing testimony from the polygraph examiner on his qualifi-

cations, the testing procedure and his opinion that the defendant had answered the questions truthfully, the district court stated as follows:

It was interesting to meet [the polygrapher] and hear his views. I still don't believe—let me put it this way, I believe that the rule of law which excludes polygraphs is the right one.

*Id.* at 42. The district court then concluded that the polygraph evidence offered by the defendant was "flat out wrong." *Id.* The Second Circuit affirmed without reaching the question of whether the district court could have relied upon the polygraph evidence if it had concluded it to be credible, stating as follows:

Although the district court stated its belief in the correctness of our traditional rule against the admission of polygraph evidence, it also allowed Messina great latitude in presenting such evidence at his sentencing hearing. And, it made a factual finding that the test results Messina offered were "flat out wrong." In view of the fact that we have not decided whether polygraphy has reached a sufficient state of reliability to be admissible under Rule 702 of the Federal Rules of Evidence, *see United States v. Kwong,* 69 F.3d 663, 668–69 (2d Cir.1995), *cert. denied,* 517 U.S. 1115, 116 S.Ct. 1343, 134 L.Ed.2d 491 (1996), we cannot say that the district court clearly erred in finding that the polygraph evidence actually presented was unworthy of credit.

*Id.* at 42.

In addition, in the unpublished disposition of *United States v. Stanislaus,* 104 F.3d 352, 1996 WL 629745, at *1 (2d Cir.1996), the Second Circuit held that the district court was not bound to credit a defendant's polygraph testimony in determining the sentence. The Second Circuit stated that the questions asked by the polygraph examiner were "inherently ambiguous." *Id.*

Other circuit courts have examined this issue as well. In an unpublished opinion, the Tenth Circuit held that the district court did not abuse its discretion when it relied on the results of a polygraph examination to establish the amount of restitution imposed against the defendant. *United States v. Chaney,* 82 F.3d 427, 1996 WL 187515, at *1 (10th Cir.1996). The defendant had pled guilty to one count of embezzling funds from a financial institution, the deposits of which were insured by the FDIC. The defendant had agreed to take a polygraph examination prior to sentencing if requested by the government. A special agent for the FBI had administered a polygraph test which was made available to the district court at sentencing. The defendant maintained that the results of the polygraph should not have been relied upon by the district court because they allegedly are not admissible to establish truthfulness. The district court stated that it would "give ... [the polygraph] testimony the use and the weight and value that I feel that is entitled to be given." *Id.* The Tenth Circuit affirmed, stating that the district court did not rely solely on the polygraph evidence but rather utilized it along with all the other information available. *Id.*

In *United States v. Givens,* 767 F.2d 574, 585 (9th Cir.), *cert. denied,* 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985), the Ninth Circuit affirmed the district court's refusal to consider polygraph evidence favorable to the defendant at the sentencing proceeding, which the court had ruled inadmissible at trial. The Ninth Circuit held that a trial judge possesses discretion to determine whether to consider polygraph testimony at sentencing. *Id.*

In *United States v. Francis,* 487 F.2d 968, 972 (5th Cir.1973), *cert. denied,* 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974), the Fifth Circuit held that the district court's refusal to consider at sentencing the result of a polygraph test was not error. The defendant had been convicted of importing heroin into the United States in violation of 21 U.S.C. § 952(a). The presentence report contained the results of a polygraph examination administered in the absence of and without notice to the government, and without a showing of the identity or qualifications of the person administering the test. *Id.* The district judge had ruled that no weight would be given to the polygraph test and the Fifth Circuit affirmed. *Id.*

■ The scant case law on the admissibility of polygraph testimony and the principles of sentencing enunciated above counsel the Court against a *per se* prohibition on the admissibility of the results of Hayes' polygraph examination. However, at this point, the Court is unable to assess the indicia of reliability and degree of accuracy of such evidence. Therefore, the Court will provide the Government with an opportunity to demonstrate the reliability of the polygraph examination, and likewise, will afford the defendant the opportunity to probe into the examiner's qualifications, training, the fairness, the questions and other related matters, at the Fatico hearing on January 9, 1998. After hearing the testimony offered by the Government and the defendant on this matter, the Court will decide the admissibility question and give Hayes' polygraph examination the weight, if any, to be properly accorded it in sentencing the defendant.

## B. *Henderson*

Marshall contends that "the government in the instant matter opened the door on polygraph examinations and seek [sic] to admit the same against an exculpatory witness vis-a-vis Mr. Marshall. If the rule of equity is to have any meaning in this Court Mr. Henderson must submit to a polygraph examination. The urgency of Mr. Henderson submitting to a polygraph test is more acute particularly where it is more than a fleeting possibility that Mr. Henderson, [is] a less than credible witness. He stands before this Court an admitted coconspirator to *defraud* a bank where he was formerly employed." Defendant's Memorandum of Law in Support of Their Motion to Deny Use of Results of Polygraph Test in Fatico Hearing and to Compel Government Witness to Submit to Polygraph Test Where it is Reasonable to Believe that Said Witness is Less Than Forthcoming at 5 (emphasis in original). The government maintains that the defendant has not asserted adequate grounds to require Henderson to waive his Fifth Amendment rights and compel him to take a polygraph examination. The government also questions whether such a coerced examination would yield reliable results.

Neither the government nor the defendant cites any case law in which a defendant in a criminal case has been compelled to submit to a polygraph examination. However, the issue has arisen in the context of public employees who are compelled to take a polygraph examination upon threat of job loss. *See, e.g., Wiley v. Doory*, 14 F.3d 993 (4th Cir.), *cert. denied*, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1994). In *Wiley*, the Fourth Circuit held that a prosecutor was entitled to qualified immunity for compelling police officers, upon threat of job loss, to take polygraph examinations where the law was not clearly established as to whether compelling officers to take a polygraph examination violated their right against self-incrimination, where the statements were never used. *Id.* at 996–98. The Fourth Circuit noted the dissension among circuit courts as to whether compelling employees to make statements by threatening disciplinary action violates the Fifth Amendment when the employee is not compelled to waive his or her rights against self-incrimination or when the statement is not used against him or her in a criminal proceeding. *Id.*

While the Due Process Clause is implicated at sentencing and a defendant has a right to challenge the procedures leading up to the imposition of his sentence, *see Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977), a district court may consider information "largely unlimited" as to kind or source at sentencing, *see Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1361, 63 L.Ed.2d 622 (1980). In addition, a defendant has no right to confrontation at sentencing. *Williams*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337; *Fatico*, 579 F.2d 707. In *Williams*, a jury convicted the defendant of murder but recommended a life sentence. The sentencing judge imposed the death penalty partly on the information contained in a presentence report. The defendant maintained that this procedure deprived him of his constitutional right to confront and cross-examine those supplying information to the probation officer, which information was included in the presentence report. The Supreme Court rejected the defendant's contention and noting that a sentencing judge has wide discretion

in considering the sources and types of information, held that it was not unconstitutional for the sentencing judge to consider either the defendant's participation in criminal conduct for which he had not been convicted or information secured by the probation officer that the defendant was a menace to society. *Id.* at 244–46, 69 S.Ct. at 1081–82.

■ In the present case, the defendant essentially requests that he be permitted to cross-examine and confront Henderson. As noted by the case law cited above, the defendant is not entitled to confront Henderson on the statements he made to the probation officer which were included in the presentence report, and the Court may consider hearsay testimony at sentencing. Further, the Court declines to unlock the Pandora's box of legal complications that would result if the Court were to direct Henderson to submit to a polygraph examination. Henderson has yet to be sentenced. He has not waived his Fifth Amendment rights nor has the government provided any assurances that testimony elicited from such an examination will not be used against him. Further, it is unclear whether Henderson's Fifth Amendment right would be violated by compelling him to take a polygraph examination, whether or not the information elicited is used against him. If Henderson, like Hayes, consents to take a polygraph examination, the defendant may present such evidence to the Court for its consideration, first establishing, of course, the foundation for its reliability. However, the Court declines to issue an Order compelling Henderson to take such an examination.

## II. CONCLUSION

Having reviewed the parties' submissions and for the reasons set forth above, it is hereby

**ORDERED,** that the government request to present the polygraph testimony of Damon Hayes, for the Court's consideration, is granted to the extent set forth in this opinion; and it is further

**ORDERED,** that the defendant's request for an Order compelling Mark Henderson to submit to a polygraph examination, is denied.

**SO ORDERED.**