UNITED STATES of America,
Appellee,

v.

Kevin WILLIAMS, aka "Supreme," aka "Ron La Roche", Defendant–Appellant.

Docket No. 00–1308.

United States Court of Appeals,
Second Circuit.

Argued May 29, 2001.

Decided June 14, 2001.

Valerie S. Amsterdam, James M. Branden, Amsterdam & Branden, New York, NY, for appellant.

Robert H. Hotz, Jr., Christine H. Chung, Assistant United States Attorney, for Mary Jo White, United States Attorney, S.D.N.Y., for appellee.

Before CALABRESI and KATZMANN, Circuit Judges, and KAPLAN, District Judge.[*]

PER CURIAM:

After a jury trial, Kevin Williams was convicted of conspiracy to commit bank fraud in violation of 18 U.S.C. § 371. He appeals only his sentence, contending that the district court (Ward, *J.*) erred in imposing a two-level sentence enhancement, pursuant to U.S.S.G. § 3C1.2, for recklessly endangering others during his flight from the North Bergen, New Jersey Police Department. For the reasons that follow, we affirm the decision of the district court.

## BACKGROUND

On September 12, 1996, members of the North Bergen Police Department were waiting for Williams outside the house of a cooperating co-conspirator. Seventy-eighth Street, where the house was located, runs one-way from the top of a hill to the bottom. The house was located halfway down the street. When Williams pulled up to the house in a white Jeep Grand Cherokee, two officers, who had been waiting in an unmarked car on an adjacent street, drove the wrong way up 78th Street and converged with Williams with their lights and sirens on. The police car stopped, and one of the officers got out and, at the passenger window of the Jeep, displayed his shield. In the meantime, Detective Mary Ann Clark had driven down the hill and stopped about a car's length behind the Jeep. Williams then put the Jeep into reverse, jumped it over the curb and onto the sidewalk—nearly hitting Clark's vehicle—and sped the wrong way up the one-way street. He was driving so

quickly that Clark, in an older model police vehicle, did not attempt to pursue him.

Shortly thereafter, Captain Robert Carmeci, also of the North Bergen Police, was driving in an unmarked car in the vicinity of Routes 1 and 9 in North Bergen. He received a radio transmission that a white four-door Jeep Cherokee was wanted, and shortly thereafter observed a car fitting that description speeding northbound on Routes 1 and 9 toward the George Washington Bridge. Carmeci followed Williams' Jeep as it turned onto Route 46, and he activated his lights and sirens. He pursued Williams for approximately two miles at speeds in excess of 70 miles per hour in this 50–mile–per hour zone. Williams drove erratically, changing lanes to the left and the right. Although Carmeci closed to within 100 feet of Williams, Williams did not pull over. Carmeci apprehended and arrested Williams when Williams stopped at the toll line.

In light of this conduct, the Pre-sentence Investigation Report recommended, *inter alia,* a two-level enhancement pursuant to U.S.S.G. § 3C1.2 for recklessly endangering others during flight. Williams objected to this enhancement, and a *Fatico* hearing was held on this, and on other sentencing issues not before us. During that hearing, the district court stated, "Speeds were excessive. The driving was erratic at times." It also stated,

> The speed limit, if I recall the testimony of Carme[si], was that on Route 46 the speed limit is 50 miles an hour and the defendant's vehicle speeded up to 70 miles an hour. . . . He was traveling at a rate of some 20 miles an hour above the speed limit and, as I recall, was moving from lane to lane. It wasn't a straight chase, as I remember. There was some

---

[*] The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of   New York, sitting by designation.

traffic which, of course also could have resulted in an unfortunate accident. Forgetting even the detective that was left at the house, there were other vehicles on the road, and here's a fellow speeding along at an excessive rate, 70 miles an hour and swerving from side to side.... He turned and put his foot, the pedal to the metal—.

The court also quoted Carmeci's trial testimony:[1] " 'As [the Jeep] entered Route 46 at the on-ramp, it started to go continually faster, at which time I activated my lights and siren at that point.... We reached speeds of 70 miles per hour plus on Route 46, at which time we were weaving in and out of traffic."

On the basis of this evidence, the district court concluded that the § 3C1.2 enhancement was warranted. Williams now appeals that determination.

## DISCUSSION

The sentencing guidelines provide for a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. " 'Reckless' refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." § 2A1.4, Applic. Note 2.

■ Where *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) is not implicated, as it is not here, the district court is empowered to find disputed facts relevant to sentencing and may do so by a preponderance of the

evidence. *See United States v. White*, 240 F.3d 127, 136 (2d Cir.2001). Moreover, "the sentencing court remains entitled to rely on any type of information known to it." *United States v. Concepcion*, 983 F.2d 369, 388 (2d Cir.1992).

On review, we must "give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see United States v. Berndt*, 127 F.3d 251, 259 (2d Cir.1997). A clear error occurs only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). And "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. 1504.

Williams presents two arguments in support of his contention that the district court clearly erred in imposing the § 3C1.2 enhancement. First, he claims that he was not actually "in flight" from the police when he was driving on Routes 1, 9, and 46. Thinking that he had lost the police on 78th Street, he alleges that he was not aware of Carmeci's pursuit. Williams states that since Carmeci was never closer than 100 feet to Williams, and Williams had his windows closed, he neither saw Carmeci's flashing lights nor heard his sirens. In addition, because Williams could have gotten off Route 46 at various exits prior to the toll plaza, he suggests that had he known that he was

1. The testimony mentioned by the district court was given at defendant's first trial, which ended in a mistrial for reasons unrelated to the issues before us.

being pursued he would have avoided being stopped in the toll lines.

■ The district court could, and did, rely on the following facts: (1) Williams quickly left 78th Street after the officers identified themselves; (2) when Carmeci activated his lights and sirens, (3) cars between Carmeci and Williams got out of the way; (4) Carmeci closed to within approximately 100 feet of Williams; (5) Williams was driving more than 20 miles over the speed limit weaving in and out of traffic; (6) the exits prior to the toll plaza could not be negotiated by a Jeep moving at 70 mile per hour speeds, either because they led to local streets with low speed limits or because the exit ramps were tightly curved. (The district court mentioned this last fact specifically during the *Fatico* hearing.) Under the circumstances, we hold that the district court could find that Williams was, in fact, fleeing the police. And Williams' contrary interpretation of the evidence does not render the district court's conclusion that Williams was "in flight" clearly erroneous.

Williams' second contention on appeal is that his conduct did not recklessly endanger anyone. He challenges the recklessness of his behavior both on 78th Street and on Routes 1, 9, and 46. As to 78th Street, Williams claims that he could not have endangered Detective Clark because he began reversing from a parked position. In addition, he contends that because he drove the wrong way on 78th Street for less than a block during the middle of the day, his exit was not reckless either. As to Williams' conduct during Carmeci's later pursuit, Williams claims that driving 50 to 55 miles per hour in a 40–mile–per–hour zone and 70 miles per hour in a 50–mile–per–hour zone during light traffic "is not highly unusual, and, even in conjunction with lane changes, caused no risk to the safety of others."

This court has yet to decide what conduct during an automobile chase rises to the level of reckless endangerment anticipated by § 3C1.2. Several other circuits have affirmed district courts' imposition of the enhancement for conduct similar to that of Williams. Thus, in *United States v. Chandler*, 12 F.3d 1427, 1433 (7th Cir. 1994), the Seventh Circuit affirmed such an enhancement on the basis of a chase through "a series of residential subdivisions … at speeds that ranged from thirty-five to fifty miles per hour while swerving from lane to lane ." Although no one was injured, the court found that the chase "might very well have resulted in injury to unsuspecting residents … [and] to the police officers who were pursuing Chandler." *Id.* at 1433–34. Similarly, in *United States v. Valdez*, 146 F.3d 547, 554 (8th Cir.1998), the Eight Circuit rejected defendants' claim that because their flight occurred in daylight, on country roads in a rural area, and no other vehicles or pedestrians were encountered, it fell short of recklessness. The court did "not interpret § 3C1.2 to require that a high speed chase occur at night, in an urban area, or that any other vehicles actually ended up in harm's way." *Id.; see also United States v. Reed*, 80 F.3d 1419, 1420, 1424 (9th Cir.1996) (affirming enhancement where the defendant drove a van at speeds approaching 75 miles per hour and crashed into cars at the top of a hill).

■ The circumstances of Williams' flight, in their totality, indicate that the district court did not clearly err in finding that Williams "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." § 3C1.2. From the moment Williams was confronted by the police on 78th Street he acted with gross disregard for the consequences of his dangerous driving-from re-

48

versing and almost hitting Detective Clark's vehicle, to speeding the wrong way on a one-way street, to driving very significantly over the speed limit while weaving from lane to lane. Because we find that, in their entirety, the circumstances of Williams' flight involved reckless endangerment, we need express no view as to whether the sole fact that Williams drove above the speed limit in light traffic would be sufficient, and conclude that the district court did not err in imposing a sentence enhancement pursuant to § 3C1.2. The sentence of the district court is therefore AFFIRMED.