UNITED STATES of America;

v.

**Paul FRANCIS, Defendant.**

No. 00–CR–251.

United States District Court,
N.D. New York.

Feb. 15, 2002.

**42**

Hon. Joseph A. Pavone, Acting United States Attorney, Northern District of New York, Syracuse, New York, John M. Katko, Asst. United States Attorney, of counsel.

Mark D. Subèn, Syracuse, New York, for defendant, Paul Francis.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. *INTRODUCTION*

On March 30, 2001, defendant Paul Francis ("Francis" or "defendant") pled guilty to Count 1 (conspiracy to possess with intent to distribute and distribution of cocaine, crack cocaine and marijuana in violation of 21 U.S.C. § 846) and Count 7 (drug user in possession of a firearm in violation of 18 U.S.C. § 922(g)(3)) of the Second Superseding Indictment (the "Indictment"). Over the Government's objection and without a plea agreement, Francis was permitted to plead guilty only to subdivision 3 of Count 1, which charged a conspiracy to distribute and distribution of marijuana. However, the Government reserved its right to argue at sentencing that Francis was, in fact, involved in the conspiracy to distribute crack cocaine.

## II. *PROCEDURAL BACKGROUND*

This case arises out of a lengthy investigation into a large drug-trafficking con-

spiracy in the Utica, New York, area which was operated by a cooperating co-defendant in this case, Ricardo Skelton ("Skelton"). Skelton was the subject of a lengthy wiretap by the Federal Bureau of Investigations—in which numerous telephone calls were intercepted between Skelton, and among others, Francis. On May 24, 2000, Francis was arrested following a search of his residence which revealed a weapon under his mattress and marijuana residue.

Skelton, Francis, and 22 others were charged in an eleven count indictment with conspiring to distribute cocaine base ("crack cocaine"), powdered cocaine, and marijuana (Count 1), and numerous firearms violations. Francis was charged in Count 7 of the Indictment with possession of a firearm by a drug user. Many of the defendants chose to cooperate with the Government, and entered into plea and cooperation agreements.

Francis did not enter into such an agreement, but instead pled guilty on his own to Counts 1 and 7 of the Indictment. With regard to his culpability on Count 1, Francis stated at his plea allocution that

> Well, basically, I'm a marijuana user, and really and truly, I don't like to really ask anybody for like help or anything like that, and to supply my own self with marijuana and keep a little money in my pocket. . . .

(March 30, 2001, Tr. 16.) Francis later clarified the conduct upon which his plea was based as follows:

> Well, my role, basically, was my own role, and I was selling marijuana, like I said, to keep my own supply, plus keep a little for me, in my pocket. I was doing

it like here and there. It was like an off and on situation, it wasn't constant.

(*Id.* 17.) At no time did Francis admit or stipulate to any involvement in the conspiracy to distribute either cocaine or crack cocaine.[1]

Also at the March 30, 2001, plea allocution, the Government indicated that at trial, it would have proven (1) that Skelton was at the center of a drug-trafficking conspiracy that distributed cocaine, cocaine base, and marijuana; (2) that there was a lengthy wiretap that intercepted numerous calls between Skelton and "Pablo"—Francis' nickname; (3) that many of the intercepted telephone calls were drug-related; (4) that follow-up surveillance to the intercepted calls showed Skelton going to Francis' home to meet with him; (5) that a search of Francis' home resulted in the discovery of a gun and marijuana residue; and (6) that the intercepted drug-related telephone calls were calls about transactions for crack cocaine as well as marijuana. (*Id.* 20–21.) Francis agreed in substance with all of these claims, except the Government's claim that the intercepted telephone calls involved transactions for crack cocaine. With regard to this claim, Francis continued to insist that he had only been involved in dealing marijuana.

Based upon the foregoing, Francis' guilty plea was accepted as to Counts 1 and 7. Because of the substantial disagreement over the type of drugs at issue in Count 1, an evidentiary hearing was ordered. This hearing was held on September 19, 2001, in Utica, New York.

At the hearing, the Government argued that the evidence demonstrated that the defendant had participated in a conspiracy to distribute between 150 and 500 grams of crack cocaine. Based on this determina-

---

1. In fact, Francis took and passed an FBI polygraph examination with regard to whether or not he had sold crack cocaine out of his apartment at 515 Plant Street, Utica, New York. As noted below, this fact may be considered for purposes of sentencing.

tion, Francis' base offense level is 34. In addition, because he possessed a firearm in connection with the conspiracy, he is subject to a two-level enhancement—resulting in an adjusted offense level of 36. This level must be adjusted downward two levels for acceptance of responsibility, and one additional level for notifying the Government in a timely manner of his intention to plead guilty. This would result in a total offense level of 33.

Based on a 1992 state court conviction for criminal use of drug paraphernalia (for which he was sentenced to one year of imprisonment), Francis has a Criminal History Category II. Based on these determinations, the guideline range for imprisonment is 151 to 188 months. However, because the maximum sentence that Francis could receive by statute is 180 months [2], the guideline imprisonment range is 151 to 180 months on a finding that Francis was involved in crack cocaine.

Francis strongly disputes the Government's position. He contends that the evidence adduced at the sentencing hearing supports his claim that he dealt only in marijuana. Based on a finding that he was responsible for five to 15 grams of marijuana, his base offense level should be no more than 14. Again, this level must be adjusted upward two levels for the firearm possession, and he is entitled to a three-level reduction for acceptance of responsibility and timely notice of intent to plead.[3] Based on a total offense level of 13 and a Criminal History Category of II,

Francis would be subject to a guideline imprisonment range of 15 to 21 months if he was only involved in marijuana.[4]

## III. *DISCUSSION*

### A. *Apprendi*

At the outset, both the Government and the defendant have questioned the applicability of the Supreme Court decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to the instant case. In *Apprendi,* the Supreme Court held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

530 U.S. at 490, 120 S.Ct. 2348. In the instant case, there was no particular quantity of drugs charged in the indictment, and the *type* of drugs at issue is at the heart of this dispute. The determination of the type of drugs at issue is significant in this case because, as noted above, it greatly affects the applicable guideline imprisonment range to be applied to the defendant.

Following the Supreme Court's "teachings" in *Apprendi,* the Second Circuit has recently stated that

> if the type and quantity of drugs involved in a charged crime may be used to impose a sentence *above the statutory maximum for an indeterminate quantity of drugs,* then the type and quantity

---

2. The maximum sentence that can be imposed on Francis' limited marijuana plea to Count 1 is five years, pursuant to 21 U.S.C. § 841(b)(1)(D). The statutory maximum for Count 7 is 10 years. 18 U.S.C. § 924(a)(2).

3. Additionally, Francis contends that his total offense level should be adjusted downward to acknowledge his physical condition (Francis is paralyzed and confined to a wheelchair), his efforts to help local police in a pending

murder investigation, and his limited role in the conspiracy charged in the Indictment. This motion for a downward departure will be addressed at the time of sentencing.

4. It should be noted that, if Count 1 is limited to marijuana, Count 7 (the firearm conviction) may result in a higher offense level than Count 1.

of drugs is an element of the offense that must be charged in the indictment and submitted to the jury. *United States v. Thomas,* 274 F.3d 655, 660 (2d Cir.2001) (emphasis added).

■ At first blush, it might appear that the rule of *Apprendi* is implicated where, as here, the type of drug at issue is to be used to increase the defendant's sentencing range from a maximum of 21 months to a maximum of 180 months. However, the Government does not contend that Francis should be sentenced to a term greater than the five-year statutory maximum on Count I. Instead, the Government contends that he should be sentenced to concurrent terms of imprisonment pursuant to U.S.S.G. 5G1.2(d). Section 5G1.2(d) states:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

The Government argues that the question of whether Francis was involved in the conspiracy to distribute crack cocaine may properly be considered as "relevant conduct" for purposes of determining his total offense level, pursuant to U.S.S.G. § 1B1.3(a).[5] The Government also argues that such consideration is necessary to effectuate the Guideline's goal of "ensur[ing] that the total punishment is imposed." (Govt.Sent.Mem. at 8.) This is the correct result under the current law of this Circuit.

The Second Circuit has held that a district court may consider drug type or quantity not charged in the indictment or submitted to the jury in determining a defendant's "relevant conduct" pursuant to Section 1B1.3(a) of the Sentencing Guidelines, "so long as the resulting sentence does not exceed the statutory maximum." *Thomas,* 274 F.3d at 663–64. As noted above, so long as Francis' sentence on Count 1 does not exceed the five-year statutory maximum under 21 U.S.C. § 841(b)(1)(D), *Apprendi* is not implicated—notwithstanding the fact that the proposed total punishment on both counts will greatly exceed five years. *See United States v. Feola,* 275 F.3d 216, 219–20 (2d Cir.2001) (where defendant did not receive a sentence greater than the maximum sentence on any count, consecutive sentences did not violate *Apprendi* ).

### B. *Factual Finding*

■ Where, as here, the requirements of *Apprendi* are not implicated, a district court is required to find disputed facts relevant to the sentencing of a crimi-

---

5. Section 1B1.3(a) provides:
 Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
 (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

 (B) in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions others in furtherance of the jointly undertaken criminal activity,
 that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

nal defendant by a fair preponderance of the credible evidence. *United States v. Williams*, 254 F.3d 44, 46 (2d Cir.2001) (citing *United States v. White*, 240 F.3d 127, 136 (2d Cir.2001)). In making its findings, the district court is "entitled to rely on any type of information known to it." *Id.* (citing *United States v. Concepcion*, 983 F.2d 369, 388 (2d Cir.1992)). This includes hearsay evidence, *United States v. Sisti*, 91 F.3d 305, 312 (2d Cir. 1996), and the results of polygraph examinations. *United States v. Marshall*, 986 F.Supp. 747, 749–50 (E.D.N.Y.1997). At sentencing, the Government has the burden of establishing the applicability of a particular sentencing guideline. *United States v. Sangemino*, 136 F.Supp.2d 293, 299–300 (S.D.N.Y.2001).

 At the outset, it must be noted that the only direct evidence of Francis' involvement in a conspiracy to distribute crack cocaine was the testimony of Skelton. While it is true that the Government introduced numerous tape recordings of conversations between Skelton and Francis, these conversations were often in a mixture of code and Patois, and were largely unintelligible, except insofar as the tapes were "interpreted" and "translated" by Skelton, and reduced to transcripts in English. Therefore, because the tapes were probative only to the extent that they were explained by Skelton, their weight must be tempered by a consideration of his credibility.

In the absence of corroborating evidence and the fact that Skelton was a cooperating witness, his testimony alone cannot be accepted to support a finding that Francis is guilty of a conspiracy to distribute crack cocaine. There are several factors which support this conclusion. First and foremost, is his extensive criminal background.

Skelton admitted, in open court, to countless and repeated criminal acts—including drug distribution, conspiracy, and assault with a deadly weapon. Second, his motive for testifying significantly undermines his credibility. At the time, Skelton faced incarceration for substantially the rest of his life if he did not render "substantial assistance" to the Government. This is a powerful motive to falsify testimony in any case, but particularly so where, as here, he was looking at a sentence of such considerable length.

Moreover, contrary to the position of the Government, there is evidence in the record to support Francis' claim that he did not deal in crack cocaine. Only marijuana residue was found during the search of his residence. Skelton did sell marijuana to him. Francis steadfastly denied distributing crack cocaine. At the same time he admits routinely selling marijuana, personal use of marijuana, possession of the firearm, and selling crack cocaine in New York City as a juvenile. The FBI polygraph examination on December 18, 2000, supported *both* his claim that he *did* deal in marijuana, and his claim that he *did not* deal in crack cocaine. Specifically, the examiner found:

A. Did you sell crack cocaine out of your apartment on Plant Street? NO

B. Were you ever involved in selling crack cocaine from your 515 Plant Street apartment? NO

In the opinion of the examiner, Paul Francis' responses did not indicate deception.

(Def. Sentencing Mem.Exh. at 2) [6]

The FBI case agent in charge of the investigation continues to maintain that

---

**6.** The government argues that the polygraph examination only exonerated the defendant

from selling crack cocaine out of his Plant Street apartment. However, this is the only

Francis was dealing in crack cocaine. He bases that opinion on Skelton's testimony, Skelton's interpretation and translation of the recorded conversations, and his own experience with drug dealers and drug terms. He completely discounts the results of the FBI polygraph test. Incredibly, the case agent never bothered to review the written report of the polygraph examiner at any time prior to testifying. This is the "lie detector test" which Francis took at the case agent's request. His opinion, while considered, cannot be a substitute for hard evidence.

In the final analysis, at best, the scales weigh evenly between crack cocaine and marijuana. The Skelton testimony and his interpretation and translation of the recorded conversations on one side, as opposed to Francis' denials, lack of physical evidence, or sales to an undercover agent or an informant, and the FBI polygraph result on the other side. Clearly, the scales do not tip, even slightly, toward Francis being part of a conspiracy to distribute crack cocaine. Therefore, Francis' involvement is limited to the conspiracy to distribute and distribution of marijuana.

## IV. *CONCLUSION*

The Government has failed to prove by a fair preponderance of the credible evidence that the defendant, Paul Francis, was dealing in crack cocaine during the time periods of the conspiracy charged in Count I of the indictment. The drug type to be attributable to the defendant, Paul Francis, for purposes of the Sentencing Guidelines is marijuana.

Therefore it is

ORDERED, that

1. The Probation Officer is directed to prepare an amended Pre–Sentence Investigation Report based upon the finding that the drug type attributable to the defendant, Paul Francis, is marijuana;

2. The report shall be completed on or before March 1, 2002; and

3. The defendant shall be sentenced on March 15, 2002, at 12:00 noon in Utica, New York.

IT IS SO ORDERED.

---

address the defendant is alleged by Skelton to have sold crack cocaine. There is no evidence he sold drugs anywhere else. The Government claims that Francis was not questioned about distribution of crack cocaine at other locations. There is no evidence of the specific questions to the defendant. However, a reasonable inference would be that the FBI examiner included inquiries as to whether or not Francis dealt crack cocaine at *any* location during the time period of the conspiracy. If not, it would seem to be a huge oversight.